Good morning, Your Honors. May it please the Court, Carolyn Wiggin from the Federal Defender's Office in Sacramento for Mr. Medrano. And I will try to reserve two minutes for rebuttal if I can. Your Honors, in this case, the District Court clearly erred in imposing the two-level gun bump on Mr. Medrano. If we first look at the gun that was found in the truck, no one has ever suggested that Mr. Medrano had actual possession of it. So then we turn to the theory of constructive possession. This Court's decision in Kelso is instructive, controlling, I argue. In Kelso, the defendant was a passenger in a truck, I believe. He admitted that he knew he was going with the driver to do a drug sale. He knew about drugs in a compartment within the truck. And in that case, the drugs and the gun that was found were in the same package. And the Court held that that was not enough for constructive possession. There was no evidence, although it was close to him, it was close to the drugs, he had access to it, but there was no evidence that he had dominion and control over that gun. So it was the gun bump was overruled in that case. And I would argue that our case is indistinguishable from Kelso. I thought in this case, though, there was a wire, and on the wire, Medrano was heard talking with another guy about smuggling guns and drugs. Is that right? Your Honor, there was a wire, and I believe some months before this, and Gatto, the sort of head person in this group, were talking, were heard talking about methamphetamine. And firearms. What I understand is that there was a discussion that maybe a firearm would be shipped to Mexico, not about this particular drive-up from L.A. and this particular gun. This was more of part of, I think, the government's theory of how this sale works is drugs come up from Mexico, U.S. currency and firearms are sent down to Mexico. Whether that gun ever was near Medrano, I don't know. But that discussion wasn't about the gun in this particular case. Was there anything in the record about Medrano admitting to knowledge that the gun was in the car? He did not admit to knowledge the gun was in the car. Did he ever admit that the drugs, that he knew the drugs were in the car? In the factual basis, he admits that drugs were in the car. He doesn't admit knowledge, but we don't dispute. Right. But effectively, you've got sort of constructive possession of the drugs, right? The drugs are not on his person. Correct. It's not in his backpack that's right there with him or in his pockets or anything like that. So it's constructive possession. And if the gun is in the same place as the drugs, why doesn't the same principle apply? Well, they're all in a hidden compartment. We don't know who loaded the drugs. Mr. Medrano has admitted he was part of trafficking drugs, so we don't dispute that he's liable for those drugs in the car. But we don't know that he's the one who packed things up and put a gun in there. And we don't know that it was his. Zebley was driving the car. Zebley had her daughter in the car. He may not have had dominion and control over that gun. We don't know whether he knew about it. We don't know if he had dominion. But there is an indication in this case, which I gather there was not in Kelso, that Mr. Medrano was sort of the leader here or the kingpin or the person who was Medrano, right? I don't think the government thinks that Medrano was the kingpin. They think someone named Gatto was the kingpin. Go ahead. I think, you know, they think that he rented a room in a house, which he admitted. They think that was the stash house. And so, I mean, I can start talking about the guns in the house if you want, but I don't think they think he's the top of this organization. Let me ask you about, I think, which is important for me for you to switch to, is that we have a drug conspiracy here. He pled guilty to that. Correct. And as part of the drug conspiracy, there were firearms found in many different places and there were bulletproof vests found in his particular residence, correct? Well, yeah. He rented a room in a house. Right. And in some parts of the house, four firearms were found. But there's no indication in his bedroom. No. Understood. But if we take a reasonably foreseeable, which I think the law requires the district court to do, and say, wouldn't it be reasonably foreseeable that a co-conspirator would possess a gun as part of this drug conspiracy when you have him talking about guns on the wire and then you find guns in the, not his room, but in the residence, as well as in other residences that are linked to this. Why isn't that enough? Why doesn't this issue end right there? Well, I believe the gun he talked about on the wire was, again, one that was going to head to Mexico. Understood. Well, one of the issues in this case is that the district court never found that a particular co-conspirator possessed one of those weapons in the house. So if we look at liability under 1B1.3, I think it's A1B, what you have to have is a co-conspirator has to possess it in furtherance of the jointly undertaken criminal activity, and that has to be reasonably foreseeable to Mr. Medrano. Here, where you don't actually have, you don't know who had it, who is the possessor, the district court never makes that clear. I don't think you can say, you know, we don't know, was everyone in this house part of the co-conspiracy? Could somebody else? Was the district judge's findings related to the car, gun in the house or the gun in the car? I thought it was the gun in the car. Pardon me? Was the district judge's findings related to the gun in the house or the gun in the car? I think the district judge was referring to the gun in the car. Right. But he still talked in reasonable foreseeability language with regard to the co-conspirators. Right? He cited those cases and said it is reasonably foreseeable that co-conspirators would have guns, but he never linked a co-conspirator to a gun. Right. But there was a gun, in fact, with the drugs in his car. In the car. And why does he need to link up this gun to a particular co-conspirator as opposed to the fact that it was reasonably foreseeable as part of this conspiracy that whoever was that in connection with the drugs there was going to be a gun? It's important to note that Mrs. Ebley is not a named co-conspirator, and the judge But it wouldn't matter if a third person put it in there, right? Whoever was a co-conspirator, whoever put the drugs in this compartment presumably also put the gun there, and as long as that person was a co-conspirator, which almost surely he was, why does it matter exactly who it is? Well, I think it's possible. Is it because that person – I mean, one possibility is because if that person isn't there, he isn't possessing it at that point. Is that why? Well, let's say it's Ms. Ebley herself who puts it in there, and she wants to bring a gun up to Sacramento for reasons that have nothing to do with the conspiracy. So under 1B1.3, the possession has to be by someone who is in this group and in furtherance of the crime of conviction, not any bad purpose, but the crime of conviction. So if she's hauling it up to Sacramento for her own reasons, she's not doing that in furtherance of the crime of which Mr. Medrano pled guilty. I see I have two minutes left, so I could stop here and wait for my rebuttal. Thank you. Your Honors, may I please the Court? Michael Beckwith on behalf of the United States. Your Honors, given the facts in this case, the district court did not plainly err, did not commit plain error by finding, first, that the defendant possessed firearms, and, second, that it was reasonably foreseeable for the defendant to possess firearms. Judge Bobby, I want to direct my first comments to one of your questions. Here, one of the firearms was found in the same compartment that the methamphetamine to which the defendant pleaded guilty. And that firearm was loaded, wasn't it? It was a loaded firearm in a hidden compartment. Your Honor, to be clear on the admissions that were in the factual basis, the defendant admitted to participating in a drug conspiracy. He admitted to the methamphetamine found in the car. He admitted to using the car. And he admitted to using the house. And so we believe that the weapons in the house, the weapon in the car, are all in play. But the weapon in the house was not what the judge based the enhancements  Your Honor, I believe it was on, it was, in fact, on all the weapons because he initially discusses possession of the firearm in the car. And then he moves on to make a general foreseeability finding as to all the weapons. And then later in the hearing, he says that he adopts the findings of the probation officer. And the probation officer found that the defendant possessed both the weapon in the car and the weapons in the house. And so he does make, by adopting the probation officer's findings, Your Honor, we believe that he makes the findings as to the weapons in the house as well. Your Honor, the defense has mentioned the Kelso case. Here we believe this case is both factually and legally distinguishable. Unlike Kelso here, there was evidence that the defendant was aware of the firearms in this case. And also unlike Kelso. Well, no, of some firearms. Of some, Your Honor. Yes, Your Honor. He was living with, in a house where firearms were found throughout the residence, body armor was found in the residence. And we also believe that he was aware of the firearm in the car. But also unlike Kelso. Well, you may believe it, but you don't have any evidence of that. We do, Your Honor, because he admitted to the methamphetamine that was in the hidden compartment. There were two hidden compartments in this car. One compartment had just methamphetamine. The other compartment had methamphetamine and the firearm in question. He admitted to knowing it was there, that the methamphetamine was there, but he didn't admit to knowing the gun was there. Yes, Your Honor. We believe that it's a reasonable, it's a fair inference that if he knew about the methamphetamine in a small compartment, the firearm that was in that compartment as well, we believe it's a reasonable inference for the Court to make. Your Honor, the other thing that distinguishes this case from Kelso legally is that unlike the case in Kelso, here there was an express finding by the district court of foreseeability. And so this moves us out of the, outside the scope of Kelso. But you can't be saying this is plain error. Why was it plain error? We, well, the question is. There was an objection to this, right? Well, Your Honor, we're reviewing the district court's factual findings, and so I believe this Court reviews for plain error. I think clear error. Clear error. I'm sorry. That's my fault. I mean that. I mean clear error. All right. So we review the district court's factual findings by clear error. We review the ultimate decision once you include those facts as knowable. Yes, plain error is a different answer. No, no, no. And of course we raise that issue in another part of the case, and that's why I'm probably conflating it. Your Honor, in this case, we believe the factual findings should be reviewed for plain error, and we believe the factual findings were supported by the evidence in this record. First, the defendant worked with a significant international drug trafficking organization. That organization not only brought narcotics into the United States, they moved money and firearms south into Mexico. And here in this case, we do have a wiretap in which the defendant is talking about the acquisition of a .50 caliber rifle, you know, a very dangerous weapon for use in Mexico. And so the defendant has knowledge that this organization is involved with weapons. Also, the defendant has ties to the leadership of this organization. He was living with a cell chief, Mr. Garcia Guillen, Mr. Gatto. He's living for time with the cell chief. Surveillance shows him meeting with the cell chief. And then, of course, there are a number of calls with the cell chief. The actual leadership of this organization, we believe, was in fact in Mexico, and the wiretap indicated that there was communications and that the organization, the cell in Sacramento, was taking direction from leaders in Mexico. And, of course, the defendant was arrested in the middle of a drug run, and the firearm and methamphetamine were found in a car that he admitted to using during that run. Your Honors, unless you have questions about the firearm, I'll move on to the reasonableness of the sentence. In this case, we do believe the sentence was reasonable. The district court acknowledged that he had discretion to vary. He considered his authority under 3553, but chose not to do so on the facts in this case. Specifically, here you have a defendant who has a significant role in a major international drug trafficking organization. This organization moved large quantities of methamphetamine, and I think during the course of the investigation, law enforcement recovered over a million dollars' worth of narcotics, about 145 pounds of methamphetamine, and the defendant in this case was arrested in connection with 19 pounds of high-grade methamphetamine. It was an organization that used firearms, was moving them into Mexico. The defendant was living in a house where firearms, including an SKS rifle, body armor, money, cash, and payo sheets were found. And, of course, at the time of his arrest, the defendant was transporting a load of firearm and methamphetamine with an 8-year-old girl. And so ---- And I'd like to go back briefly to the gun, okay? Yes, ma'am. The district court seems to have relied on the reasonable foreseeability of the 8-year-old. He didn't actually find, as I see it, that the defendant himself possessed the gun. First of all, he only talked about the gun in the car, and second of all, he didn't say that the defendant himself possessed the gun, did he? No, Your Honor. It was ---- I think the definition of possession is someone that has knowledge and the power and intention to control, and so he wasn't making a distinction between active or constructive possession. Well, I thought he didn't even do that. I thought he said that it has ---- the person has possession if the person knows of, is present, has physical control. And then he goes on and says, In the case of a jointly undertaken criminal activity, the applicable specific offense shall be determined on the basis of all reasonable foreseeable acts of the co-conspirators. And then he says that it doesn't matter whether a defendant or a chieze was personally present when the firearm was used, so long as it was reasonably foreseeable. And then he goes on and says that for those reasons the court overrules the objection, and he doesn't exactly ever hold that the defendant had personal possession, does he? Your Honor, I believe he does. Inconstructive. Constructive possession. Inconstructive possession.  Where? To be technical, it would be constructive possession. Where? Because, well, he doesn't distinguish between constructive and actual. And I believe that ---- No, but he doesn't ---- he doesn't distinguish between that and the reasonable foreseeability approach either. Your Honor, in that paragraph where he says, for these reasons, I interpret that to mean that for ---- there were two bases for the enhancement. One was the possession and the other was the reasonable foreseeability. And so I ---- when we read when he says, for these reasons, that includes both the reasonable foreseeability of the weapons that were in the car and the house. And then we also ---- I do want to point out that he did adopt the findings in the PSR, and the probation officer recommends or states that the defendant possessed the weapon in the car and possessed the weapons in the house. And so by adopting the probation officer's findings ---- I see. He didn't actually make a finding. Okay. Okay. Right. Back to where you were. Your Honor, we were talking about the reasonableness of the sentence. And I do believe that ---- Well, the main issue that's raised about the reasonableness is whether the district judge had some obligation, although it wasn't raised, to discuss the policy considerations underlying the methamphetamine. Yes, Your Honor. And there we believe the Court should apply a plan error standard. That issue was not raised below.  I think it's fair. And under Alderman, the Court is required to apply the guidelines in effect at the time unless there are ex post facto issues. And so by applying the guidelines, certainly in the absence of an objection, I don't believe the Court committed error. And certainly that error was not clear. It wasn't plain and obvious. And what the defense raises now is something that fairly is subject to debate, but under this case, this Court's precedent, if something is debatable, it's not clear or obvious error. So we don't believe that the district court plainly erred in not considering or, I guess, looking at the guidelines. Well, the real question is whether a district court has an obligation to consider the policy considerations. If the issue was raised, our case law basically says, yes, he has to consider it. He has discretion to consider it and he has to demonstrate that he at least exercised  Isn't that the case law in the circuit? Yes, Your Honor. All right. So the substantive question, it seems to me, is does that only trigger if there's an objection, right? Well, Your Honor, I... Ordinarily, when you see a guideline, you just take the guideline. And the question is, is there any obligation to question the guideline if nobody asks you to? I don't believe so, Your Honor. I do not believe so, especially when it's not asked. But if somebody asks you to, then there is an obligation. To consider it. To consider it. Certainly, certainly. I think it would. And I think most courts would consider a defense objection or defense raising that kind of issue. But those are not the facts of this case. No, they're not. If they didn't, they would violate the case law. That would be a problem. So I think they would consider it if it had been raised, although those are not the facts of our case. Here we have that issue is not raised. And so the judge did whatever a judge would, I think, do is first consider, as this judge pointed out, the guidelines are just a starting point. So he considered the existing guidelines in place at the time, and then he went on to consider the 3553 factors, which would account for, could potentially account for any issues of the fairness of the sentence, given the breadth of those factors. And so the judge here, though, said, I choose not to follow, I choose not to exercise my authority under 3553. He recognized that it was a significant sentence, but then he also recognized that it was a significant crime. And in light of the fact that the defendant was for a number of issues, including the fact that he was on probation, he decided. Okay. Thank you very much. Thank you very much, Your Honor. Thank you, counsel. I'll give you one minute in rebuttal. Thank you, Your Honors. One minute and 54 seconds in rebuttal. Thank you very much. I'll just respond briefly. You know, my opposing counsel has said, well, the district judge adopted the findings in the PSR, so that sort of shows that he made the proper findings. But I think if you look back at the paragraphs of the PSR concerning the guns, there are clearly findings of a gun in the car and findings of a gun in the houses. But there's no real specific finding that he had constructive possession or that some other co-conspirator had possession. Well, actually, the district court did say, So that seems to be a direct finding with regard to that weapon. And for that one, I would say under Kelso, there's, I mean, that was what happened in Kelso, and this Court said it's not enough that he admits to knowledge of drugs. He admitted, I know there was drugs in the car. I know I was going to a drug deal. I know there was drugs in the car. But without more information about his relationship to the gun that was in the bag with the drugs, there wasn't enough to say that he had dominion and control. So I would say to that that Kelso controls, and there wasn't enough here. On the sentencing issue, certainly defense counsel and district court did ask for a 144-month sentence. So in that sense, he did take the position that the guideline sentence was unreasonable and 144 months would be appropriate. It is true that this deconstruction of the meth guideline is being presented for the first time here. It's what I hope is a persuasive argument that the guideline sentence is too high. Thank you. Thank you very much. Thank you both, Counsel. The case of United States v. Metrano is submitted.
judges: Berzon, Bybee, Owens